UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOVAN WILLIAMS,

                Plaintiff,

v.                                                     Case No. 20-cv-1197-bhl

GWENDOLYN A. VICK,
J. ADDERTON,
CRYSTAL MELI,
CO BERKLEY AND
JOHN AND JANE DOES,

                Defendants.

---

## DECISION AND ORDER

---

      Jovan Williams, an inmate at Waupun Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. The plaintiff filed an amended complaint on August 31, 2020, which he is permitted to do once without the court's permission. *See* Fed. R. Civ. P. 15. However, the court was unable to read parts of his amended complaint because the plaintiff's handwriting was too light to copy properly. The plaintiff was ordered to refile his amended complaint, which he did on September 8, 2020. Dkt. No. 9. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his amended complaint, dkt. no. 9.

**I.   Motion for Leave to Proceed without Prepaying the Filing Fee**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee.

1

28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On August 13, 2020, Chief Judge Pamela Pepper (to whom the case was assigned at that time) ordered the plaintiff to pay an initial partial filing fee of $0.91. Dkt. No. 6. The plaintiff paid that fee on August 31, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### B. The Plaintiff's Allegations

Williams alleges that, on August 8, 2018, while he was housed in the restrictive housing unit, he told defendant Officer J. Adderton that he was suicidal and needed to be placed on observation status. Dkt. No. 9 at 2. Williams claims he showed Adderton some pills, and told him that he was going to overdose on them. *Id.* According to the plaintiff, Adderton shook his head no and left. *Id.*

The plaintiff states that defendants Nurse Gwendolyn Vick and Officer Berkley later came to pass out medication. *Id.* at 2-3. The plaintiff says he told both of them that he has a lot of pills and that Adderton had walked away and that he needed to be placed on observation status. *Id.* at 3. Vick allegedly "yelled back" at the plaintiff that "that's a security issue[]," and then she and Berkley walked away. *Id.*

The plaintiff states that, later, Berkley came back to the plaintiff's cell, and he showed her a handful of pills, which he began to swallow in front of her. *Id.* The plaintiff states that she did

3

nothing to stop him from overdosing. *Id.* The plaintiff states that after he swallowed the pills, Berkley radioed defendant John Doe security supervisor and defendant John Doe sergeant to come to the plaintiff's cell. *Id.* The plaintiff states that they did not come; instead, defendant John Doe officer told Berkley over the intercom to walk away from the plaintiff. *Id.* Berkley allegedly told John Doe officer what the plaintiff and done and then walked away. *Id.*

The plaintiff states he was left in his cell until third shift (it is not clear how much time passed). *Id.* The plaintiff says he cut himself and covered his window with blood. *Id.* According to the plaintiff, Vick provided medical care. *Id.* at 4. The plaintiff asserts that he told Vick that he had overdosed on pills but she refused to give him medical care or send him to the emergency room. *Id.* The plaintiff alleges that he also believes that Vick falsified his medical records, though he does not explain why he believes that or what records he thinks she falsified. *Id.* Finally, the plaintiff alleges that Crystal Meli, who is the health services manager, "did nothing to correct defendants' actions." *Id.*

**C. Analysis**

The Eighth Amendment prohibits "cruel and unusual punishments" and "imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate care." *Phillips v. Diedrick*, 18-C-56, 2019 WL 318403 at *2 (E.D. Wis. Jan. 24, 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). This duty includes preventing inmates from causing serious harm to themselves. *Pittman ex rel. Hamilton v. Cty. of Madison*, 746 F.3d 766, 775-76 (7th Cir. 2014).

The Seventh Circuit has recently clarified, however, that the Eighth Amendment does not apply when an inmate who wants attention makes an insincere suicide threat that results in minor injuries that are quickly and easily treated. *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020). That

4

is because inmates suing for damages under §1983 must provide evidence of a recoverable injury. *Id.*

"In order to succeed in a §1983 suit, a plaintiff must establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019) (emphasis in original) (internal quotation marks omitted). In other words, an inmate may not recover damages based only on the fact that an official did not immediately respond to a suicide threat. *Lord*, 952 F.3d at 905. To prevail, the inmate must also establish that he suffered an injury as a result of the official ignoring his threat. *Id.*; *see also Davis v. Gee*, No. 14-cv-617, 2017 WL 2880869 at *3-4 (W.D. Wis. July 6, 2017) (holding that to show a constitutional injury, the harm must present a sufficiently serious risk of serious damage to future health; swallowing a handful of Tylenol fails to do that).

The plaintiff claims that Adderton, Vick and Berkley ignored him when he told them he was going to overdose on pills and needed to be placed on observation status. Whether the plaintiff's threats and acts of self-harm were sincere or whether they were intended to manipulate staff or get attention is a question the court cannot answer at this stage of the case. The record is in need of further development to determine how many pills the plaintiff threatened to swallow, what the pills were and whether swallowing the pills posed a serious risk to his health. The plaintiff's allegations are enough at this stage for him to state a claim of deliberate indifference against Adderton, Vick and Berkley.

The plaintiff also states a claim of deliberate indifference against Berkley, the John Doe Sergeant, the John Doe Security Supervisor and the John Doe Officer based on his allegations that they failed to get him medical attention after he swallowed the pills. According to the plaintiff,

5

Berkley requested that the sergeant and security officer come to the plaintiff's cell, but they ignored her request. She also informed the John Doe officer what had happened, but he instructed her to walk away. Assuming the pills posed a serious risk to the plaintiff's health (an inference the court must draw in the plaintiff's favor at this stage), Berkley was not relieved of her obligation to secure medical attention for the plaintiff merely because others ordered her to ignore him. The plaintiff may proceed against these defendants.

The plaintiff does not, however, state a claim against Vick based on his allegations that she did not send him to the emergency room or otherwise treat his alleged overdose. Unlike with cuts or broken bones, there is no obvious treatment to provide someone who takes more than a prescribed amount of medication. Sometimes observation is all that is required. "A prisoner's dissatisfaction with a [medical provider's] prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (citations and internal quotation marks omitted). While the plaintiff may have wanted to go to the emergency room, he makes no allegations suggesting that he suffered any harm as a result of Vick's decision not to send him or otherwise treat him. Thus, the plaintiff fails to state a claim against her.

The plaintiff's allegation that Vick falsified his medical records is too vague and speculative to state a claim. The plaintiff does not explain what records Vick falsified, how she falsified the, or how he was harmed by the alleged false information in the unidentified records. Without these factual allegations the court cannot reasonably infer that she did what the plaintiff concludes she did. *See Ashcroft*, 556 U.S. at 678.

6

Case 2:20-cv-01197-BHL-SCD   Filed 10/01/20   Page 6 of 9   Document 11

The plaintiff also fails to state a claim against Meli based on his allegations that she did not correct the other defendants' actions. Under §1983, a plaintiff may sue only those individuals who were personally involved in the alleged constitutional violation. *Colbert v. City of Chicago*, 851 F.3d 649. 657 (7th Cir. 2017). The mere fact that a person is a supervisor is an insufficient basis for liability. The only time a supervisor will be held liable for a subordinate's misconduct is if the supervisor directs or consents to the misconduct. For example, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye" for fear of what they might see. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988)). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Jones*, 856 F.2d at 992. The court cannot reasonably infer from the plaintiff's allegations that Meli was directly involved in the alleged violations while they were occurring, so the plaintiff fails to state a claim against her.

Because the plaintiff is suing Doe defendants, he will have to use discovery to learn their names. After the named defendants respond to the plaintiff's amended complaint, the court will enter a scheduling order setting a deadline for discovery. At that time, the plaintiff may serve discovery requests on the named defendants to get information or documents that will help him identify the names of the Doe defendants. Once he knows their names, he should promptly notify the court. The plaintiff may not serve discovery requests until *after* the named defendants respond to his amended complaint and *after* the court enters a scheduling order.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** Crystal Meli because the plaintiff fails to state a claim upon which relief can be granted against her.

7

Case 2:20-cv-01197-BHL-SCD   Filed 10/01/20   Page 7 of 9   Document 11

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the amended complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Gwendolyn Vick, J. Adderton, and CO Berkley. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the amended complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the $349.09 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The plaintiff is reminded that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his whereabouts may result in the court dismissing this case without further notice.

Dated at Milwaukee, Wisconsin this 1st day of October, 2020.

s/ Brett H. Ludwig
Brett H. Ludwig
United States District Judge